IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBRA STRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:13cv751-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 52 years old at the time of the hearing before the ALJ. (R. 49). She has a high school education. (*Id*.). Her past work experience includes work as a wood handler, daycare worker, and gluer. (R. 40). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "migraine headache disorder; occipital neuralgia; hypertension; carpal tunnel syndrome, bilateral; status post hallux valgus

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

correction, right with double osteotomy and second right toe; diverticulosis; and degenerative disc disease, cervical spine." (R. 28). The ALJ concluded that the plaintiff was able to return to her past relevant work as a daycare worker and gluer, and thus, she was not disabled. (R. 40).

**B. Plaintiff's Claims**. The plaintiff presents two issues for the Court's review. As stated by the plaintiff, the issues are as follows.

1. The Commissioner's decision should be reversed, because the Appeals Council failed to show in its written denial that it adequately evaluated the new evidence submitted by Ms. Strong before denying review.

2. The Commissioner's decision should be reversed, because the Appeals Council erroneously denied Ms. Strong's in failing to remand this case based upon new evidence.

(Doc. # 12, Pl's Br. at 3).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v.*

*Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

**A. Appeals Council Decision.** The court quickly dispenses with the plaintiff's first issue. Strong argues that a remand is required because the Appeals Council failed to adequately explain its evaluation of her new evidence in its denial of review. When a claimant seeks review by the Appeals Council of an adverse ruling by an ALJ, the Appeals Council has discretion not to review the ALJ's denial of benefits. *See* 20 CFR § 404.981. However, "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence." *Flowers v. Comm'r of Soc. Sec.,* 441 Fed. Appx. 735, 745 (11th Cir. 2011) (panel decision) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).[4]

The Appeals Council, in denying review, stated that the Council "found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have

---

[4] Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

5

denied your request for review." (R. 1). The Council further stated that

> [i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.[5] We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. We concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision.

(R. 1-2) (footnote added). Under the law of this circuit, the Appeals Council's explanation is sufficient. *See generally Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007) (Appeals Council accepted evidence but denied review.) "[B]ecause a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.,* 420 Fed. Appx. 901, 903 (11th Cir. 2011). *See also Manfield v. Astrue*, 395 Fed. Appx. 528, 5300 (11th Cir. 2010) (same); *Caces v. Comm'r, Soc. Sec. Admin.*, 2014 WL 1243813, *4 (11th Cir. 2014) ("The Appeals Council adequately considered the new evidence and expressly found that it did not provide a basis for changing the ALJ's decision."); *Smith v. Soc. Sec. Admin.*, 272 Fed. Appx. 789, 801 (11th Cir. 2008) (the Appeals Council's statement that it specifically considered the plaintiff's reasons for disagreeing with the ALJ's decision and the additional evidence was sufficient).

Relying on *Flowers, supra*, and *Epps, supra*, the plaintiff argues that the Appeals Council's failure to adequately explain its decision mandates a reversal. Her reliance is

---

[5] The new evidence considered by the Appeals Council consisted of Strong's representative's letter dated May 17, 2012 and a medical source statement by Dr. Wael Hamo dated April 27, 2012. (R. 4)

6

misplaced. In *Flowers,* the court determined that the Appeals Council did not adequately consider the plaintiff's new evidence because, based on its review of the evidence, "there [was] a reasonable possibility that [the plaintiff's] new evidence would change the ALJ's decision." 441 Fed. Appx. at 745. The case at bar is distinguishable from *Flowers* because, as will be explained below, the additional evidence submitted to the Appeals Council would not have changed the ALJ's decision.

Even if the Appeals Council erred, at this juncture, the error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context). *See also Howard v. Soc. Sec. Admin., Comm'r.*, 2014 WL 1910840, *2 (11th Cir. 2014) ("even if the AC improperly failed to consider some of [the plaintiff's] additional evidence, any error was harmless because we have independently reviewed all submitted evidence.") The court is not required "to remand for express findings when doing so would be a "wasteful corrective exercise" in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." *Sanchez v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 855, 856 (11th Cir. 2013).

The court must review the entire administrative record, including any new evidence submitted to the Appeals Council, to determine whether the Commissioner's decision is supported by substantial evidence. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1069 (11th Cir. 1994) ("[N]ew evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals

Council accepts the case for review as well as when the Council denies review."). The court now turns to the question of whether this matter should be remanded to the Commissioner for further consideration of the new evidence.

**B. Remand based on New Evidence.** Strong next argues that this matter should be remanded to Commissioner for consideration of the new evidence presented to the Appeals Council and this court. *See* Doc. # 12, Pl's Br. at 16. New evidence presented to the Appeals Council, but not to the ALJ, may be considered by the court to determine whether remand is proper under 42 U.S.C. § 405(g). Section 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances. In order to prevail on a claim for remand under § 405(g) a claimant must show that (1) there is new, non-cumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative hearing. *See Vega v. Comm'r of Social Sec.,* 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

With her request for review, Strong presented to the Appeals Council a medical source statement from her treating neurologist, Dr. Wael Hamo. (R. 15-21). In his assessment, Dr. Hamo opined that Strong can sit for one hour at a time without interruption and sit for a total of seven hours in a work day. (R. 16). He further opined that she can occasionally use her

hands to reach, handle, finger and push/pull. (R. 17). According to Strong, this assessment directly contradicts the ALJ and the consultative physician's opinion that she is not disabled. (Doc. # 12, Pl's Br. at 6-8).

Applying the three-prong remand standard, the evidence is new because it was not before the ALJ, and it was not available at the time of the hearing. The administrative hearing was held on January 31, 2012, and the ALJ rendered his decision on March 19, 2012. Dr. Hamo's medical source statement is dated April 23, 2012. (R. 20). However, the evidence must also be not cumulative which the court concludes it is. The ALJ had before him the Dr. Hamo's treatment records as well as the medical records of Dr. Elkhier. (R. 373-405). In his decision, the ALJ carefully considered Dr. Hamo's treatment of Strong, detailing his findings.

> On the claimant's last recorded examination by her neurologist Dr. Wael Hamo on December 14, 2011, she was found to have no problems with her lower extremities. Her gait and tandem gait were found to be within normal limits (Exhibit 12F, pg. 2). . . The claimant began seeing Neurologist Wael Hamo, M.D., on November 1, 2010, with complains (sic) of neck pain, low back pain, upper and lower extremity pain, numbness and tingling. The claimant had an MRI of her cervical spine on November 4, 2010, which showed some problems, but no central canal impingement. There was mild to moderate degenerative foraminal stenosis at C4-C5 and C5-C6, but the central canal remained patent and the spinal cord signal was normal. There was no disc extrusion or frank central canal stenosis (Exhibit 12F, pg. 13). On November 12, 2010, the claimant told Dr. Hamo that she was having neck pain and low back pain, with pain distribution down to the right lower extremity. Dr. Hamo said that a right sciatic nerve block as a treatment of right lumbosacral radiculopathy was considered, but the claimant refused. He prescribed Zanaflex, Lortab, Mobic and Naproxen (Exhibit 12F, pg. 7). On May 13, 2011, Dr. Hamo reported that the claimant "stated that her low back pain has been better." The claimant continued to complain about neck pain,

which Dr. Hamo thought was related to her headaches and occipital neuralgia. At an examination on December 14, 2011, Dr. Hamo found that the straight leg raising sign was positive on the right side, but the claimant's gain and tandem gait were normal (Exhibit 12F, pg. 2-6).

\*       \*       \*

The claimant consulted Dr. Wael Hamo of Hamo Neurology Clinic on November 1, 2010, regarding her headaches. She said that she had experienced migraine headaches 12-13 years ago, but they had been worse lately. Dr. Hamo said that the claimant had tenderness on the right and left occipital area of the head. He stated that the claimant's headaches were a mixture of migraine and neck-related headache, with occipital neuralgia. He ordered a carotid Doppler test which found that the claimant's arteries were patent. The impression of the test was, "Normal carotid duplex." The claimant also had an MRI of her brain on November 4, 2010, at Valley Medical Center, which found no significant problems. There was no intracranial mass or mass effect. The scan showed a few tiny foci of flair intensity compatible with minimal chronic small vessel ischemic change. The diffusion weighted images were negative for recent intracranial ischemia or fluid collections. The impressions of the MRI was, "No significant intracranial abnormality seen" (Exhibit 12F, pg. 11-14). Dr. Hamo continued to treat the claimant every two months for headaches and occipital neuralgia. He gave the claimant bilateral occipital nerve block injection on October 24, 2011; however, the claimant refused the injections on July 14, 2011, and December 14, 2011. He increased the claimant's dosage of Lortab to 10 milligrams, advised her to stop smoking and prescribed Pamelor for her neck-related headaches (Exhibit 12F, pg. 2-7).

\*       \*       \*

On visits to her neurologist, Dr. Wael Hamo, from November 2010 to December 2011, the clamant reported numbness and tingling in her right upper extremity. Dr. Hamo ordered an electromyography (EMG) test, which showed results consistent with moderate to severe bilateral carpal tunnel syndrome. There was, however, no evidence of right ulnar neuropathy, right peroneal, tibial or sciatic neuropathy, or motor-sensory peripheral neuropathy or myopathy. Nerve conduction velocity (NCV) tests showed that the claimant was substantially within normal limits. The claimant refused to proceed with a needle examination on her right upper extremity (Exhibit 12F. pg. 9-10, 17).

10

> On May 13, 2011, Dr. Hamo received bilateral injections to treat her wrist pain. On July 14, 2011, the claimant stated that the injections that she had received in both hands had given her some relief. However, when Dr. Hamo offered to repeat the injections, the claimant "refused." Dr. Hamo prescribed wrist splints for both hands. The claimant reported an aggravation of her carpal tunnel syndrome on December 14, 2011, and she showed tenderness on both wrists. However, she again declined to receive carpal tunnel injections (Exhibit 12F, pg. 2-7).
>
> Although the claimant has received a diagnosis of carpal tunnel syndrome, her neurologist has chosen a relatively conservative course of treatment, consisting of pain medications, injections and hand braces. At the hearing, the claimant was wearing a brace only on one hand, saying that she lost the other. She reported to Dr. Wael Hamo that the injections were effective, but she refused to receive them on subsequent visits. This is surprising, since the claimant has reported significant pain from the condition and cited it as one [of] her chief reasons for being unable to work. Dr. Hamo, apparently, did not think that the claimant's carpal tunnel syndrome was severe enough to recommend carpal tunnel release surgery. The claimant's carpal tunnel syndrome is taken into account in the residual functional capacity in this decision by specifying light exertional work, with limitations on pushing and pulling bilaterally with the upper extremities and with limitations on bilateral reaching, handling, fingering, feeling, and climbing of ladders, ropes and scaffolds.

(R. 33-37).

The new evidence from Dr. Hamo consists of his medical source statement and a pain questionnaire. The plaintiff's conclusory statement that Dr. Hamo's medical source statement creates a "reasonable probability" of a different outcome on remand is simply insufficient to demonstrate that the evidence is not cumulative, particularly in light of the ALJ's thorough consideration of his treatment records. It is clear that the ALJ considered Dr. Hamo's treatment of Strong in determinating her residual functional capacity ("RFC").

In addition, Dr. Hamo's medical source statement is cumulative because the ALJ

considered the medical source statement and pain questionnaire submitted by Dr. Abdalla Elkhier which were materially similar to Dr. Hamo's medical source statement and pain questionnaire.

> The claimant's primary care physician, Dr. Abdalla Elkheir, completed a medical source statement on January 19, 2012, which opined that the claimant had exertional, postural and environmental limitations to her work-related activities. He also reported that the claimant had pain to such an extent as to be distracting to adequate performance of daily activities. These statements are, in part, inconsistent with Dr. Elkhier's examination records, other treating and examination records and the claimant's own statements. Dr. Elkhier reported that the claimant had somewhat more exertional limits than determined in the residual functional capacity in this decision. He also found more limitations to standing and walking, although he found that the claimant could complete an 8-hour workday. However, his own examinations reported no generalized weakness or significant musculoskeletal problems (Exhibit 10F, pg. 2-8). He cited the claimant's foot problems for his opinion, but as noted about, Dr. Robert Russell reported that the claimant had recovered from surgery and was asymptomatic by September 2010 (Exhibit 2F, pg. 2-8). On the consultative examination on November 30, 2010, Dr. Ammar S. Aldahar noted that the claimant had no neurological problems or limitations to range of motion in her lower extremities. She walked with a normal gait and did not use any assistance device (Exhibit 5F, pg 2-3). Dr. Elkhier opined that the claimant could walk only 10 minutes at time and could walk only 20 minutes in a full workday. However, on her function report, the claimant did not check "walking" among the activities affected by her condition. She stated she could walk 30 minutes before resting (Exhibit 3F, pg. 14). Dr. Elkhier found a few more restrictions in use of hands in her medical source statement than are found in this decision. However, as noted, Dr. Elkhier only mentioned carpal tunnel or hand problems on one of the claimant's last three visits, raising questions as to the supposed severity of the condition (Exhibit 10F, pg. 2-4). On the consultative physical examination, the claimant was found to have normal grip strength (Exhibit 5F, pg. 3). Dr. Elkhier opined that the claimant could only occasionally reach, stoop and kneel, and could never crouch and crawl. However, no problems of this nature were noted on Dr. Elkhier's examinations (Exhibits 10F, pg. 2-8). On the claimant's function report, she did not report any problems with reaching, squatting, bending, kneeling or climbing (Exhibit 3E, pg. 14; 10F, pg. 2-8). The claimant's pain has been

12

shown be improved with medications and injections, and she has not shown signs of the long term effects of severe pain. Dr. Elkhier's medical source statement is, in part, inconsistent with his own examination records, the records of other treating and examining physicians, and the claimant's statements about her condition.

(R. 37-38).

Dr. Hamo's medical source statement, submitted to the Appeals Council, parallels Dr. Elkhier's statement.[6] With respect to Strong's ability to lift and carry, Dr. Hamo opines that she can occasionally lift 11 to 20 pounds while Dr. Elkhier opined that she could never lift that weight. *Cf.* R. 398 & 406. While Dr. Hamo and Dr. Elkhier differed as to the amount of time Strong could sit for one time without interruption, both doctors opined that she could sit for at least six hours in an eight-hour work day.[7] (R. 399, 407).

Moreover, Dr. Hamo's treatment records, which the ALJ considered, do not support the limitations set forth in his medical source statement and pain questionnaire. For example, although Dr. Hamo asserted that Strong's pain was present to such an extent as to be distracting, Strong repeatedly refused injections to treat her pain. In addition, Dr. Hamo opined that Strong suffered severe side effects from her medications even though his treatment notes do not contain any complaints regarding side effects, and Strong testified at the administrative hearing that she had not told *any* of her doctors that she suffered from side effects from her medication. In fact, prior to the administrative hearing, Dr. Hamo increased

---

[6] Dr. Hamo's pain questionnaire mirrors Dr. Elkhier's pain questionnaire.

[7] Dr. Hamo opined that Strong could sit for seven hours.

one of Strong's medications. In his medical source statement, Dr. Hamo also opined that Strong could only walk for fifteen minutes. (R. 16). However, in the same form, Dr. Hamo indicated that Strong could go shopping, travel without a companion, ambulate without any assistive device, use public transportation and "walk a block at a reasonable pace on rough or uneven surfaces." (R. 20). His treatment of Strong was conservative. Thus, the court concludes that Strong's new evidence is cumulative and not material. Consequently, because the ALJ considered all of Dr. Hamo's treatment records, and his medical source statement is not supported by his own records, the court concludes that the plaintiff has failed to demonstrate that there is a reasonable possibility that Dr. Hamo's medical source statement would change the administrative result. Thus, the evidence does not satisfy all three requisite criteria for remand under § 405(g) and therefore, remand is not proper.

The crux of Strong's argument rests in her position that the ALJ improperly credited the opinion of the consultative physician, Dr. Aldaher, over the opinions of her treating physician, Dr. Hamo. The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's

14

opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence.  *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).  The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of *any* physician when the evidence supports a contrary conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (emphasis added).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

Dr. Ammar Aldaher conducted a consultative physical evaluation of the plaintiff on December 1, 2010.  (R. 297-299).  At that time, Dr. Aldaher noted that Strong complained of low back pain.  (R. 297).  Her range of motion in the lumbosacral region was intact and she did not use an assistive device.  (*Id*.)  She complained of no headaches or dizziness.  (R. 298).  Her physical examination noted no spasm of the neck and no abnormality in her cervical range of motion.  (*Id.*)  In addition, he noted that her "[r]ange of motion in the upper and lower extremities reveal[ed] no abnormalities."  (*Id*.) There were no spasms in her back,

15

and "[n]o abnormality in her range of motion in the lumbosacral area." (*Id.*). He opined that Strong was "able to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects." (R. 299).

Certainly, a report from a consultative physician can constitute substantial evidence.[8] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987). More importantly, however, although Dr. Aldaher only saw Strong once, his opinion was supported by her medical records. *Fries v. Comm'r of Soc. Sec.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006). For example, on November 1, 2010, Dr. Hamo noted that Strong had full motor strength of her upper and lower extremities; her gait and tandem gait were within normal limits; and a Romberg sign was negative. (R. 380). On November 12, 2010, Strong refused an injection to treat her mild to moderate lumbosacral radiculopathy. (R. 378). Strong did not see Dr. Hamo again until May 13, 2011, when she reported that her low back pain was better. (R. 377). On July 14, 2011, Strong refused injections to treat her carpal tunnel syndrome and her neck, back and headache pain even though she reported relief from the injections. (R. 376). On October 24, 2011, Dr. Hamo treated Strong's bilateral occipital neuralgia with an injection. (R. 375). She had full motor strength of her upper and lower extremities and her gait and tandem gait were within normal limits. (*Id.*) On December 14, 2011, Strong complained to Dr. Hamo of increased lower back pain and headaches, but refused injections

---

[8] The ALJ also gave sufficient reasons for discounting Dr. Elkheir's opinion. "Because the ALJ articulated good cause for discounting the treating physician's opinion, the ALJ did not err in giving more weight to the consulting, examining physician's opinion." *Kelly v. Comm'r of Soc. Sec.*, 401 Fed. Appx. 403, 408 (11th Cir. 2010).

16

to treat the pain. (R. 373).

To the extent that the plaintiff is arguing that the ALJ should have accepted Dr. Hamo's opinion over Dr. Aldaher's, as the court explained, the record supports Dr. Aldaher's opinion. Strong argues that the ALJ should not have accepted Dr. Aldaher's opinion because Dr. Hamo's medical records contradict him, specifically with regard to straight leg raises. On November 30, 2010, Dr. Aldaher noted that Strong had negative leg raises. (R. 298). However, Dr. Hamo's treatment notes reflect that Strong had positive straight leg raises on her right side on six occasions in 2011. (R. 373, 376-78, 381). Strong parses the medical records too thinly looking for discrepancies.[9] Strong ignores the other aspects of their evaluations on which Dr. Aldaher and Dr. Hamo agreed. For example, both doctors determined that Strong had full range of motion in her upper and lower extremities; that her gait was normal; and that was capable of sitting. lifting and carrying objects. While the record indicates that the plaintiff has been diagnosed with low back pain as demonstrated by the positive leg raises, the medical evidence in the record indicates that this condition does not have more than a minimal effect on Strong's ability to perform basic work activity. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). *See also Reynolds v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 850, 852 (11th Cir. 2012). "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or

---

[9] The court also notes that Strong testified at the administrative hearing that it was her headaches and carpal tunnel syndrome that prevented her from working, not her low back pain. (R. 60).

normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 751, 753 (11th Cir. 2011); *Manzo v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 265, 269 (11th Cir. 2011).

The ALJ examined and evaluated the medical records for evidence supporting Dr. Aldaher's assessment of the severity of Strong's physical impairments. While it is clear that Strong suffers from some pain, the record contains only minimal evidence, other than her own self-reports which the ALJ discounted, of the *severity* of her impairments. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that a remand based on new evidence is not warranted and that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is due to be affirmed.

A separate order will be entered.

Done this 30th day of May, 2014.

                                            /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE